UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MAKUEI JOSEPH AJAK LUETH,

Petitioner,

v.

BRUCE SCOTT et al.,

Respondents.

Case No. C26-1170-SKV

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS

Petitioner Makuei Joseph Ajak Lueth is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.  He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking immediate release from custody or a second, "constitutionally compliant" bond hearing.  Dkt. 1 at 17.  Petitioner, who is proceeding through counsel, asserts that his "continued detention is unlawful because:  (1) he was denied a constitutionally adequate custody hearing under the Fifth Amendment, and (2) his detention flows directly from a Fourth Amendment violation during a pretextual and unlawfully prolonged traffic stop."  *Id.* at 4.  Respondents filed a return to the petition, *see* Dkt. 8, together with supporting declarations and exhibits, *see* Dkts. 9–10.

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 1

Petitioner filed a reply. *See* Dkt. 11. For the following reasons, the Court DENIES the petition without prejudice.

I.    BACKGROUND

Petitioner is a native and citizen of South Sudan. *See* Dkt. 1 at 5. On April 1, 2022, Petitioner last entered the United States on a nonimmigrant F1 student visa. *See id.* at 2. He withdrew from his school early and thereby failed to maintain his F1 student status. *See id.* Since he began living in the United States, Petitioner married, brought his wife to the United States, and formed a family, which now includes two U.S. citizen children. *See id.* at 5; Dkt. 1-2 at 30. He also filed an application for asylum, which remains pending. *See* Dkt. 1 at 9. He is scheduled for a final hearing on the merits of his applications for asylum and withholding of removal on May 4, 2026. *See* Dkt. 10 at 4.

On February 5, 2026, a U.S. Customs and Border Protection ("CBP") officer queried Petitioner's vehicle registration while Petitioner was filling his car with gasoline in Montana. *See* Dkt. 1 at 2. After Petitioner left the gas station, Montana Highway Patrol, accompanied by the CBP officer, initiated a traffic stop, conducted a records check, and determined that Petitioner had lost his F-1 status. *See id.* at 2–3. The CBP officer detained Petitioner, and ICE initiated removal proceedings. *See id.* at 3. Petitioner has been detained at NWIPC since. *See id.*

On March 17, 2026, Petitioner received a custody redetermination hearing at which he was represented by counsel. *See id.* Petitioner's counsel represents that, at that hearing, the Government expressed concern about flight risk due to three bench warrants issued after

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 2

Petitioner's failures to appear in three traffic citation cases.[1]  Dkt. 1-2 at 25.  The Immigration Judge ("IJ") "asked Mr. Lueth several questions about the circumstances of the bench warrants issued against him in the traffic offense proceedings[,]" which Petitioner answered.  *Id.* Petitioner explained that the warrants stemmed from misunderstandings about the requirement that he appear and that he subsequently appeared in each case without the warrants being executed.  *Id.*  Petitioner's counsel further represents that the IJ proceeded to ask him if he had anything to add in support of Petitioner's bond request, and that he "explained that Mr. Lueth had the full support of his family, including his two U.S. citizen daughters, and that, because he had filed a strong asylum claim with USCIS and now with the court, he had every incentive to continue to participate in removal proceedings if released from detention."  *Id.* at 26.  The IJ then denied Petitioner's request for release on bond on grounds that he was a flight risk and issued a standard, check-box order memorializing that decision.  *See* Dkt. 1 at 6; Dkt. 1-2 at 22–23, 26.

On April 7, 2026, before the April 16, 2026, deadline to appeal the IJ's decision, Petitioner filed the instant habeas action challenging his bond hearing as constitutionally inadequate because the IJ found, without providing reasoning on the record or his order, that Petitioner was a flight risk and further failed to discuss monetary bond, Petitioner's financial circumstances, or alternatives to detention.[2]  *See* Dkt. 1 at 3; Dkt. 1-2 at 23.  Petitioner never appealed the IJ's order.

---

[1] The record indicates that Petitioner was involved in three traffic-related criminal cases in Utah filed in 2022, 2023, and 2024.  *See* Dkt. 1-2 at 12.  Petitioner does not dispute Respondents' representation that he pled guilty to those offenses.  *See id.* at 12–13; Dkt. 10 at 2–3.  It is unclear whether three or four bench warrants were issued related to those cases.  Respondents assert four, not three, warrants were issued, which Petitioner does not dispute.  *See* Dkt. 10 at 4; Dkt. 11 at 11.

[2] Habeas petitions must be "signed and verified by the person for whose relief it is intended or by someone acting in his behalf."  28 U.S.C. § 2242.  Local Civil Rule 100(e) instructs that, "[i]f a petition or motion is not made and verified by the party in custody, the person making such petition or motion shall verify the same on behalf of such party in custody, and shall set forth therein the reason why it is not made and verified by the party in custody, and

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 3

## II.    DISCUSSION

Federal courts have authority to grant writs of habeas corpus to individuals detained in "violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3). Here, Petitioner challenges the lawfulness of his detention on two grounds:  "(1) he was denied a constitutionally adequate custody hearing under the Fifth Amendment, and (2) his detention flows directly from a Fourth Amendment violation during a pretextual and unlawfully prolonged traffic stop."  Dkt. 1 at 4.  The second challenge is not cognizable.  Even if his arrest was unlawful, it would not provide a basis to find his present detention unlawful.  *See, e.g.*, *Suraj v. Bondi*, No. C25-2699-TMC, 2026 WL 507682, *2–3 (W.D. Wash. Feb. 24, 2026).  The Court therefore limits its inquiry to his first challenge.

The parties agree that Petitioner is presently detained pursuant to 8 U.S.C. § 1226(a).  *See* Dkt. 1 at 5; Dkt. 8 at 3.  Section 1226(a) grants the Government the discretionary authority to determine whether a noncitizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the noncitizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory.  *See* 8 U.S.C. § 1226.  When a noncitizen is arrested and taken into immigration custody pursuant to § 1226(a), ICE makes an initial custody determination, including the setting of bond.  *See* 8

---

shall state he or she knows the facts set forth therein, or if upon information and belief, the sources of his or her information shall be stated."  Local Rules W.D. Wash. LCR 100(e).  Respondents challenge the petition as unverified.  *See* Dkt. 8 at 15.  However, one of the attorneys who signed the petition also submitted a sworn affidavit setting out the facts of Petitioner's bond hearing, which the attorney attended, and facts related to that hearing provide the basis for Petitioner's due process claim.  *See* Dkt. 1-2 at 25–27.  Respondents do not dispute any of the factual allegations in that affidavit.  While the petition and its attachments do not indicate why the petition is not verified by Petitioner, the Court observes that Petitioner is detained in Tacoma, Washington, while his attorneys are based in Utah and are appearing pro hac vice in this matter.  Because the operative facts are presented in a sworn affidavit, the Court accepts the petition.  Counsel are advised to strictly adhere to all requirements of Local Civil Rule 100(e) moving forward.

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 4

C.F.R. § 236.1(c)(8).  After the initial custody determination, the detainee may request a bond redetermination by an immigration judge.  8 C.F.R. § 236(d)(1).

At the bond redetermination hearing, the burden is on the detainee to show to the satisfaction of the immigration judge that he warrants release on bond.  *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).  In making a bond decision under § 1226(a), an immigration judge must consider whether the detainee is "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk[.]"  *Id*.  An immigration judge may also consider any number of discretionary factors, including:  (1) whether the detainee has a fixed address in the United States; (2) the detainee's length of residence in the United States; (3) the detainee's family ties in the United States, and whether they may entitle the detainee to reside permanently in the United States in the future; (4) the detainee's employment history; (5) the detainee's record of appearance in court; (6) the detainee's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the detainee's history of immigration violations; (8) any attempts by the detainee to flee persecution or otherwise escape authorities; and (9) the detainee's manner of entry to the United States.  *See id.*; *In re Guerra*, 24 I. & N. Dec. at 40.

Once an immigration judge has made an initial bond redetermination, a detainee's request for a subsequent bond redetermination must be made in writing and must show the detainee's circumstances have changed materially since the prior bond redetermination.  8 C.F.R. § 1003.19(e).  If the immigration judge denies bond, the detainee may appeal to the Board of Immigration Appeals ("BIA").  *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1059 (9th Cir. 2008); 8 C.F.R. § 236.1(d)(3).  If the BIA affirms the immigration judge's decision, the detainee

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 5

may seek habeas relief from the district court.  *See Singh v. Holder*, 638 F.3d 1196, 1200–03 (9th Cir. 2011); *Leonardo v. Crawford*, 646 F.3d 1157, 1159–61 (9th Cir. 2011); *Sun v. Ashcroft*, 370 F.3d 932, 941 (9th Cir. 2004).

Here, Petitioner argues he was denied constitutionally sufficient process at his bond redetermination hearing because the IJ:  (1) did not articulate that the Government bore the burden of proof and his summary ruling demonstrates Petitioner was effectively required to prove he was not a flight risk, *see* Dkt. 1 at 8; (2) failed to articulate whether he applied a clear and convincing evidence standard of proof,[3] *see id.* at 9; (3) failed to meaningfully consider the totality of Petitioner's circumstances or support his ruling with reasoning and engagement with the record, *see id.*; (4) relied on insufficient and mischaracterized evidence, including multiple rescinded bench warrants related to now-resolved traffic offenses, *see id.* at 9–10; (5) failed to consider bond amount, ability to pay, or alternatives to detention, *see id.* at 10; and (6) failed to provide a reasoned decision or opportunity to be heard by adjourning the hearing after rendering an unexplained decision, *see id.* at 11.  Respondents counter that Petitioner failed to exhaust his administrative remedies by failing to appeal the IJ's decision and that he does not demonstrate prudential exhaustion requirements should be waived here.  *See* Dkt. 8 at 5–7.  On these specific facts, the Court agrees with Respondents.

Exhaustion here is a prudential, rather than a jurisdictional, requirement.  *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017).  A court may require prudential exhaustion where:  (1) agency expertise is necessary to build a proper record; (2) waiving the requirement

---

[3] Petitioner premises his first two allegations of procedural deficiency on *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011).  That case, and the line of cases it relies upon, "addressed detention under §§ 1225(b), 1226(c), or 1231(a)(6), not detention that was based on § 1226(a)[.]"  *Rodriguez Diaz*, 53 F.4th at 1202.  The Ninth Circuit has rejected the notion that those cases dictate procedures applicable to persons like Petitioner who have only been detained under § 1226(a).  *See id.* at 1203.

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 6

would encourage bypassing the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes, obviating the need for judicial intervention. *Id*. (citing *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)).  If a court determines that an immigration detainee has failed to exhaust administrative remedies as a prudential matter, it should either dismiss the matter without prejudice or stay the case to permit exhaustion.  *Id*. However, even if these factors weigh in favor of prudential exhaustion, the Court may waive the requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void."  *Id*. (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).  "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these *Laing* factors applies."  *Aden v. Nielsen*, C18-1441-RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019) (first citing *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1003 (N.D. Cal. 2018) (petitioner "must show that at least one of the *Laing* factors applies in order to excuse exhaustion"); and then citing *Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011) (declining to waive exhaustion requirement because petitioner has not "demonstrated grounds for excusing [them]")).

The facts of this case weigh strongly in favor of requiring exhaustion.  First, initiating an appeal was necessary to develop the record, to clarify the IJ's reasoning, and for the parties and this Court to discern whether any constitutional error or harm transpired.  Petitioner presumes, because the IJ did not provide contemporaneous explanation of the legal standards and analysis applied, that the procedure he received through his first bond hearing was constitutionally deficient.  Respondents point out that it is standard practice for IJs to render an oral ruling and that a written decision is only provided if either party appeals.  *See* Dkt. 8 at 9–10 (citing

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 7

Immigration Court Practice Manual ch. 8.3(e)(7) ("Usually, the Immigration Judge's decision is rendered orally.  If either party appeals, the Immigration Judge prepares a written decision based on notes from the hearing, however the record will not be transcribed.")).  Petitioner did not appeal, so the IJ did not provide him with a written decision that likely would have clarified ambiguities he now presents as indicia that his bond hearing *may* have fallen short of due process.  Without having exhausted his claims, Petitioner is not equipped to press them, and the Court is not positioned to decide them.  *See, e.g.*, *Zuo v. Hermosillo*, No. C26-0708-JHC, 2026 WL 809882, at *1 (W.D. Wash. Mar. 24, 2026).

Second, if any error occurred, it appears limited to the conduct of Petitioner's specific bond hearing such that resolution of his claims would not settle a recurring legal question or reduce the number of future habeas filings.[4]  *See Martinez v. Scott*, No. C25-1538-TSZ-GJL, 2025 WL 2689844, at *5 (W.D. Wash. Aug. 27, 2025), *report and recommendation adopted*, No. C25-1538 TSZ, 2025 WL 2689066 (W.D. Wash. Sept. 19, 2025) ("Because of the

---

[4] The Court notes that another court in this district recently declined to impose prudential exhaustion requirements in a case involving bond denial due to a recalled bench warrant.  *See W.T.M. v. Bondi*, No. C25-2428-RAJ-BAT, 2026 WL 262583 (W.D. Wash. Jan. 30, 2026).  In *W.T.M. v. Bondi*, the petition raised "the question of whether a recalled or inactive bench warrant can ever serve as the *sole* basis for an IJ's determination that a petitioner is a flight risk and resultant bond denial." *Id.* at *2 (emphasis added).  In finding that the second factor weighed against requiring exhaustion, the *W.T.M.* court explained that the above "question, once answered . . . , may actually promote clarity such that future petitioners may not feel the need to 'bypass' the administrative process by appealing bond denials to courts in this District, and may 'thus reduce the number of future habeas petitions.'" *Id.* (quoted source omitted).

Petitioner in this case was the subject of multiple unexecuted bench warrants, and it is far from clear that those warrants were the *only* basis for the IJ's determination that he presents a flight risk.  Indeed, unlike the *W.T.M.* petitioner, who had one recalled bench warrant and whose criminal charges were dismissed without convictions, Petitioner pled guilty to his traffic offenses, including one misdemeanor, after multiple bench warrants issued.  *See id.* at *4.  In his Reply, Petitioner concedes that "'four bench warrants' might indeed be sufficient to justify a pattern and practice of flight from prosecution[,]" but he argues due process required balanced consideration that accounted for Petitioner's ultimate resolution of his traffic cases before the warrants were executed and other factors.  Dkt. 11 at 11.  The IJ explicitly solicited context regarding the warrants from Petitioner, and he invited Petitioner's counsel to provide supplemental information in support of Petitioner's bond request.  *See* Dkt. 1-2 at 25–26.  The IJ was apparently positioned to weigh the unexecuted warrants against the circumstances of their issuance, which Petitioner has not provided to this Court, as well as Petitioner's traffic case record and other factors.  The Court is not positioned to find the unexecuted warrants were the only basis for the IJ's flight risk determination, given the sparce record before it and lack of appellate record.

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 8

fact-intensive inquiry involved in reviewing individual bond determinations, federal judicial resolution of this case would resolve the question of whether Petitioner—and Petitioner alone—is entitled to bond as a matter of constitutional law.").  Instead, allowing Petitioner to bypass agency review would encourage others to do the same if they deem federal court a preferable forum.  *See id.*

Finally, the BIA has authority to correct erroneous factual determinations and legal errors, including those "with constitutional implications."  *Aden*, 2019 WL 5802013, at *1 (first citing *Liu v. Waters*, 55 F.3d 421, 425 (9th Cir. 1995); and then citing *Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 819 (9th Cir. 2003)); *see* 8 C.F.R. § 1003.1(d)(3)(i)–(ii).  There is no indication here that, given the opportunity, the BIA would not correct any alleged mistakes by the IJ and thereby obviate the need for judicial intervention.

Waiving the exhaustion requirement is not appropriate here.  Petitioner contends that an appeal would have been inadequate or futile without a record of the IJ's reasoning.  *See* Dkt. 11 at 7–8 ("The IJ offered no explanation, articulated no standard or criteria, created no oral record of how the decision was reached. The BIA cannot review reasoning that does not exist.").  Had he appealed, the IJ's reasoning would have been reduced to writing for BIA review.

Petitioner also argues that, absent prompt intervention by this Court, he will suffer irreparable harm through continued detention.  *See id.* at 8; Dkt. 1 at 5.  However, Petitioner "cites no authority for the position that detention following a bond hearing constitutes irreparable harm sufficient to waive the exhaustion requirement."  *Aden*, 2019 WL 5802013, at *3; *see, e.g.*, *Zuo*, 2026 WL 809882, at *2 (finding a petitioner had not shown irreparable harm sufficient to waive exhaustion requirements by only invoking the time necessary to resolve a bond appeal); *Martinez*, 2025 WL 2689844, at *6 (finding no showing of irreparable harm where a petitioner

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 9

had a bond hearing less than two weeks before filing a habeas petition and distinguishing cases where petitioners presented evidence of individualized harm); *Hilario Pankim v. Barr*, No. 20-CV-02941-JSC, 2020 WL 2542022, at *7 (N.D. Cal. May 19, 2020) (rejecting argument that continued detention constituted irreparable harm because it "begs the constitutional questions presented in his petition by assuming that petitioner has suffered a constitutional injury."). Although "district courts in this circuit have routinely waived prudential exhaustion requirements for noncitizens . . . facing prolonged detention while awaiting administrative appeals[,]"Petitioner has been detained for less than three months at this point, had a bond hearing, is scheduled for an asylum merits hearing within days, and never pursued an administrative appeal.[5] *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1253–54 (W.D. Wash. 2025) (collecting cases).

III.    CONCLUSION

For these reasons, the petition is DENIED without prejudice for failure to exhaust administrative remedies.

Dated this 1st day of May, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

---

[5] Because this matter is properly dismissed due to Petitioner's failure to exhaust administrative remedies, the Court declines to address Petitioner's substantive arguments related to due process.

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 10